**In re Daniel James SHILLINGLAW, Debtor.**

**Bankruptcy No. 87–02749–BKC–TCB.**

United States Bankruptcy Court,
S.D. Florida.

Nov. 30, 1987.

Gary E. Sherman, Boca Raton, Fla., for Lawson.

Kenneth Rappaport, Boca Raton, Fla., for debtor.

Daniel L. Bakst, West Palm Beach, Fla., Interim Trustee.

## ORDER ON OBJECTION TO EXEMPTION

THOMAS C. BRITTON, Chief Judge.

Two creditors, Warren Lawson and Lawson Fence Company, Inc., have objected (C.P. No. 12) to the debtor's claim of exemption for a parcel of real property located in Palm Beach County. The debtor has responded (C.P. No. 18) and the matter was heard on November 3.

The property, which lies outside of any city, is ten contiguous acres with a residence, a barn, and a trailer. It is valued at $500,000.

The objection relates only to that part of the property occupied by a house trailer and the barn which is leased to and occupied exclusively by a tenant under a written lease which contains no termination date. The tenant lives in the trailer and sublets the stalls in the barn to others. The rent payable to the debtor is $1,200 a month. After the filing of this bankruptcy on July 31, the debtor tell us he has intended to evict the tenant for non-payment of the rent, but the record reflects no action taken on that claimed post-petition intention. The lease began June 1, two months before the bankruptcy.

The objecting creditors argue that the homestead was abandoned by the debtor when and to the extent that the property was leased to a third party for that party's residence and business purposes. I agree. *McEwen v. Larson*, 185 So. 866, 868 (Fla. 1939); *Anderson Mill & Lumber Co. v. Clements*, 134 So. 588, 592 (Fla.1931); *Weiss v. Stone*, 220 So.2d 403, 405 (Fla. Dist.Ct.App.1969).

These cases hold that:

"Actual residence is an essential quality to support a homestead, and this cannot be when a portion of it is surrendered to another to be built on and occupied by that other. ... The homestead was designed for the head of the family for the family's protection and should be scrupulously preserved, but it cannot be employed as an instrument of fraud or a 'city of refuge' to escape payment of obligations made in good faith." *Anderson* at 592.

The foregoing cases were decided before the Florida Constitution was amended in 1968. It presently provides that:

"a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of onehalf acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or his family."

Though this present provision is not identical to its predecessor in the 1885 Constitution, it is a restatement with no apparent intended substantive change pertinent to the issue presented here. *See Fla.Stat. Ann.*, Commentary, Art. 10, § 4.[1] There have been no decisions of .the Florida courts passing on the extent to which the "residence" restriction bears on rural property or whether the effect of that restriction has been changed in the present Constitution.

Decisions under the former provisions make it clear that though the Constitution did not then (and does not now) expressly require the owner or his family to occupy the place claimed as a homestead, the word "homestead" implies occupancy of the property as the home place. *Read v. Leitner*, 80 Fla. 574, 86 So. 425 (1920).

The determination whether an owner has abandoned all or part of his homestead turns upon the owner's actions and intent. The owner will seldom admit an intent to abandon, but his intent may be inferred from his conduct. The issue here is wheth-

1. The earlier Constitution had exempted "the residence *and business house* of the owner" in a municipality. The apparent intentional omission of the business house in the present Constitution is, of course, a restriction not an expansion of the homestead exemption. The elimination in the present Constitution of the "head of a family" restriction is a significant expansion of the homestead exemption, but it does not bear on the issue before me: whether the "residence" restriction is different for urban and rural property.

er *on the date of bankruptcy* the debtor had abandoned his homestead use of the leased portion of his property.

■ Where property is rural property, the homestead exemption applies to the total acreage allowed without regard to the use that may be made of that portion of the tract not covered by the residence and enclosures, when the land is actually occupied and lived on by the owner or his family, if the use of the property *serves or is consistent with the business or occupation of the owner or his family.*

For example, the homestead has been held under the former Constitution not abandoned by the establishment and operation of a military school by the resident owner on his rural property, though the school includes classrooms, dormitories and staff housing. *Armour & Co. v. Hulvey,* 73 Fla. 294, 74 So. 212 (Fla.1917).[2]

I cannot believe, however, that the construction of a hotel, apartments or homes on rural property and the leasing of those accommodations to provide homes for others would shield the property so used from creditors' claims merely because the owner lives in one of the units. The Florida courts have not yet dealt with such a use, but I believe that even the *Armour* court would have reached a contrary result if the military school had been leased to and operated by a third party.

The phrasing and punctuation of the present Article X, § 4 raises a question whether the limitation "to the residence of the owner or his family" applies to all homesteads or just a homestead in a municipality. Having lived through and participated in the deliberations of the Commission which drafted our present Constitution, I know there was no overt or announced intent to restrict the limitation to city homesteads.

The canons of construction, which could suggest a contrary intent, are merely tools to help us find the intended meaning. They should not prevail against common sense and there is a limit to the stupidity we should impute to those who draft and vote upon legislation which we are required to apply to specific facts. I doubt that anyone could intend, for example, to permit a property owner on Key Biscayne (an unincorporated area) to shield a 1,000 room hotel from his creditors' claims merely because it is built on less than 160 acres owned by him and he lives in one of the rooms. If *that* result was not intended by our present Constitution, the facts of this case differ only in degree, not in principle.

I find, therefore, that when this debtor leased a part of his property to a third party for that party's exclusive use as a residence and a business for an indefinite time, the debtor abandoned his homestead pro tanto.[3]

I have not overlooked the language of the Florida Supreme Court in *Buckels v. Tomer,* 78 So.2d 861, 865 (Fla.1955). However, the use urged as abandonment there was merely the platting of a part of the property for future sale. Had the plat been developed with streets and had some of the lots been sold or leased to others who occupied the property, I do not believe that the court would have reached the same conclusion.

Nor have I overlooked my colleague's decision in *In re Boucher,* 8 B.R. 713 (Bankr.M.D.Fla.1981). The facts which were before Judge Proctor are that prior to bankruptcy a portion of the debtor's property was leased. The lease had terminated five years before the petition was filed. These facts are quite distinct from the facts before me, and I think the case which is before me requires the same conclusion I reached in *In re Rodriquez,* 55 B.R. 519 (Bankr.S.D.Fla.1985).

There is no evidence before me which furnishes a predicate for a finding as to

---

**2.** The elimination in the present Constitution of the owner's "business house" makes this holding questionable today.

**3.** The temporary absence of an owner for reasons of health, business or recreation from his residence and the temporary rental of his home during that absence do not necessarily demonstrate an intent to abandon the premises. That is not the situation in this case.

what the precise extent or value of the exempt and non-exempt portions of this real property are. If the parties are unable to submit an agreed order reflecting such a determination, the movants are instructed to renotice this matter for determination by this court.